RUBAIZ v. TUCSON GAS, ELECTRIC LIGHT & POWER CO. et al.

(Circuit Court of Appeals, Ninth Circuit.    May 2, 1922.)

No. 3791.

Appeal and error ⬤⇒71(4)—Order on receiver's report as to priority of claims held not final decree.

An order directing the receiver to pay to a judgment creditor of the defendant corporation the net receipts of the property, up to the date of the intervention by the trustee to secure the bondholders, in preference to the plaintiff, whose claim was not reduced to judgment, and further providing that the receipts thereafter should be first applied to the mortgage debt in the event there was a foreclosure, and reserving the right to apply such proceeds to the judgment if there was no foreclosure, was a final decree only in so far as it related to the payment to the judgment creditor, so that an appeal by such creditor from the order relating to priority of the mortgage debt must be dismissed.

Appeal from the District Court of the United States for the District of Arizona; William H. Sawtelle, Judge.

Suit in equity by the Tucson Gas, Electric Light & Power Company against the Tucson Rapid Transit Company, in which Edwin F. Jones was appointed as receiver of defendant corporation, and in which Asma Rubaiz intervened as a judgment creditor of the defendant company, and the International Trust Company intervened as trustee under the mortgage securing the corporation's bonds. From an order instructing the referee as to priority of the claims of the interveners, Rubaiz appeals. Appeal dismissed.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Richey & Richey, and Moore & Frawley, all of Tucson, Ariz., for appellant.

S. L. Kingan, John H. Campbell, and A. R. Conner, all of Tucson, Ariz., for appellees.

Before ROSS, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. The complaint of the Tucson Gas, Electric Light & Power Company against the Tucson Rapid Transit Company, owning and operating a street railway in Tucson, was filed in the United States District Court of Arizona on February 20, 1919. The action was to recover a judgment of $62,062.43 upon certain promissory notes then due and unpaid, together with interest thereon. It was alleged in the complaint that on March 15, 1906, the defendant executed a deed of trust to the International Trust Company of Colorado; that the trust deed conveyed to the trustee all of defendant's property, real, personal, and mixed, that it then had or might thereafter acquire or become possessed of; that the conveyance was made to secure the payment of certain bonds about to be issued by the defendant in the aggregate sum of $300,000, together with interest thereon at the rate of 6 per cent. per annum; that trust bonds in the aggregate sum of $150,000 were to be issued forthwith; that of said last amount, bonds aggregating $114,800 were issued and were then outstanding; that the accrued and unpaid interest on said bonds amounted to $73,000. It was further alleged that in the month of January, 1918, one Asma Rubaiz brought an action against the defendant for personal injuries sustained by her by reason of the negligence of defendant's employees, and that a judgment had been obtained by Rubaiz against the defendant for the sum of $4,500, and that the judgment was then unpaid. It was alleged that for many years defendant, in operating its street railway, had not been able to earn interest and operating charges, and that the defendant was insolvent. It was further alleged that, if the creditors of the defendant or the owner of the judgment in said personal injury action should press their demands, the result might be disastrous to the public, by reason of the inability of defendant to operate its street railway system. The plaintiff represented that, for the purpose of preserving the property, a receiver should be appointed, with the usual power and authority to collect all the assets of the defendant company and to operate said street railway system under the direction of the court. A receiver was accordingly appointed February 21, 1919.

On April 1, 1920, Asma Rubaiz filed her petition in intervention in this action, alleging that there was due on her judgment the sum of $4,552.75, together with costs, amounting to $106, and that the judgment was a prior lien on the personal property of the defendant. On April 26, 1920, the International Trust Company filed its petition and complaint in intervention, and leave to intervene was granted by the court on April 29, 1920. The complainant asked that its claim be declared prior and superior, over and above the necessary expenses of operation and the expenses of the receivership that might thereafter be incurred from said operation.

The receiver, in his first report, dated April 26, 1919, described the property owned and operated by the defendant, and its liabilities, including the judgment and costs in the case of Asma Rubaiz v. Tucson Rapid Transit Company, which was then pending on appeal in the Supreme Court of the state. He also described the line of defendant's street railway along certain streets of the city of Tucson, its condition, and the condition of the crossings at certain points, particularly the crossing at Stone avenue, where the line of the street railway crosses five tracks of the Southern Pacific Railway Company. In the receiver's second report, dated June 23, 1919, he reported the operations of the defendant and the unsatisfactory condition of the crossing at Stone avenue. In the receiver's third report, dated April 23, 1920, he reported on the operations of the defendant for the year, and again called attention to the Stone avenue crossing, and the fact that the city council of Tucson had passed an ordinance to have Stone avenue paved at the crossing to a designated point. The order of the city directed the paving of four blocks by the street car company in accordance with the terms of defendant's franchise. The receiver also called attention to the fact that the franchise specifically provided that it might be declared forfeited upon the failure to pave at any time when required by the city council. He reported the filing of the petition by Asma Rubaiz to have her judgment, which then amounted to about $5,000, paid out of the funds then in the hands of the receiver. He also reported that state and county taxes amounting to $674 would be due May 1, 1920, and that the bondholders would intervene in the suit and seek to have the money in the hands of the receiver applied to the interest of their mortgage, or to the use and protection of the property covered by the mortgage, claiming that the money in the hands of the receiver should be applied to the payment of their interest pro tanto, and that the same should be applied to the paving of the road so that the property might be preserved. The receiver requested the instructions of the court.

In the receiver's fourth report, filed May 24, 1920, he again called attention to the fact that the money in his hands was claimed by Rubaiz in satisfaction of her judgment; that the trustee for the bondholders also claimed that it had a first lien upon all the assets in the hands of the receiver; that the plaintiff was claiming an equitable lien upon the income of the property in payment of its debt. The receiver submitted the question of priorities to the court. On June 24, 1920, the court directed the receiver to pay on the Rubaiz judgment out of the funds in his hands the sum of $960.05, the net receipts of the defendant company from April 1, 1920, to April 27, 1920. Further action of the court upon this claim was taken under advisement. In the receiver's fifth report, dated April 4, 1921, he reported the operations of the defendant, and that he had on hand the sum of $11,756.19; that he had appeared before the city council and explained the situation of the company with respect to the paving of Stone avenue as ordered by the council. The city council in office while these matters were under consideration had given place to a new city council, and no further proceedings had taken place to compel the paving of Stone avenue.

On April 18, 1921, the court rendered an opinion in which the proceedings hereinbefore referred to were reviewed, and in which it was held that the net proceeds of the operation of said street railway company after April 26, 1920, should be applied on the mortgage debt due the International Trust Company upon the foreclosure of such mortgage, in the event there was a foreclosure. In the event the mortgage is not foreclosed, the court reserved the right to apply such amount of the net proceeds of the operation of the street railway company as might not be necessary for the operation and preservation of the property in the hands of the receiver to the payment of the Rubaiz judgment lien. The court concluded its opinion by entering an order that the receiver was authorized to advertise for bids for the paving of Stone avenue as in said ordinance and franchise provided, and submit the bids to the court for approval or rejection, and, if any bids were approved by the court, that said receiver be authorized to enter into a contract for the doing of such work, and that the same be paid for out of the moneys in his hands not otherwise necessary for the operation of the said street railway.

We are advised by a receiver's report filed in the District Court February 4, 1922, and brought here upon a suggestion of a diminution of the record, that the receiver has, in obedience to the order of the court, paved certain crossings and has repaired the pavement on certain other portions of its line of street railway. The report contains a copy of the proceedings of the city council, from which it appears that the city council has withdrawn its order with respect to the paving by the Transit Company of certain other portions of its tracks.

It appears that the lower court ordered the payment of $960.05 on the Rubaiz judgment, being the net proceeds of the defendant company from April 1, 1920, to April 27, 1920, because on April 1, 1920, when Asma Rubaiz filed her petition for intervention, she was the only intervener claiming the right under a final judgment to be paid in full out of the income of the property. The intervention of the trustee was not filed until April 26, 1920. Between April 1st and 26th Rubaiz was the only party before the court holding a judgment lien who claimed the right to immediate payment out of the property acquired as the proceeds of its operations by the receiver. The Light Company is not a judgment creditor, and its right of payment has not yet been determined by a final decree, and the right of the trustee to be paid upon its mortgage not yet foreclosed is in a like position. They all are matters still in the breast of the court, and so reserved, as has been further action upon the Rubaiz claim.

The errors assigned are substantially that the court found that the filing of the petition for intervention by Rubaiz did not create a lien in her favor on income theretofore accumulated, and that the court found that the filing of said petition did not create a lien in her favor on the net income then in the hands of the receiver, and that the court did not direct the receiver to pay her claim in accordance with the prayer of her petition. The substance of these assignments is that the court erred in not paying the Rubaiz claim in full. But it appears that there is no final judgment or decree with respect to the matters in con-

troversy, except the partial payment on the Rubaiz claim, from which no appeal has been taken; that there is no final judgment or decree with respect to the plaintiff's claim to be paid the amount due on its notes for principal and interest, or its priority with respect to other claims; that there is no final judgment or decree with respect to the intervention of the trustee for payment on the mortgage held by it, or its priority with respect to other claims; and that the priority between the unpaid remainder of the Rubaiz claim to be paid out of operating income, and the priority for current expenses incurred for such paving and repairs to streets as were ordered by the city council and carried out by the defendant to preserve its franchise, is not now a question before the district court. It therefore follows that, as this court can only exercise appellate jurisdiction to review by appeal or writ of error final decisions in the district courts, we have no jurisdiction of the appeal.

It is accordingly dismissed.